IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISION

| | |
|---|---|
| STREETERVILLE CAPITAL, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SUPERCOM, LTD., an Israeli company, SUPERCOM, INC., a Delaware corporation,<br><br>Defendants. | **ORDER AND MEMORANDUM DECISION ON MOTION TO DISMISS AND MOTION TO COMPEL ARBITRATION**<br><br>Case No. 2:23-cv-00836<br><br>District Judge Tena Campbell |

There are two motions before the court.  Defendants Supercom, Ltd. and Supercom, Inc. (together, Supercom) have filed a motion to dismiss the case for lack of personal jurisdiction (ECF No. 4), while Plaintiff Streeterville Capital, LLC (Streeterville) has filed a motion to compel arbitration (ECF No. 9).  For the reasons stated below, the court DENIES Supercom's motion to dismiss and GRANTS Streeterville's motion to compel arbitration.

## BACKGROUND

Streeterville sued Supercom in the Third Judicial District Court of Salt Lake County before Supercom removed the case to this court.  (See Notice of Removal, ECF No. 1.)  The court has subject matter jurisdiction over the action because the parties are completely diverse and the amount in controversy exceeds the sum or value of $75,000.  (See id. ¶¶ 10–13); see 28 U.S.C § 1332(a) (listing requirements for diversity jurisdiction).  Streeterville alleges that Supercom breached its contractual duties and the implied covenants of good faith and fair dealing inherent to the contracts entered into by the parties.  (See Compl., ECF No. 1-2[1] at 5–7.)

---

[1] Streeterville's complaint and all Transaction Documents, discussed below, are docketed at ECF No. 1-2.  Unless otherwise indicated, record citations are to PDF pages.

But in its prayer for relief, Streeterville is not seeking damages it alleges are owed under the contracts. (See id. at 8.) Rather, Streeterville requests that the court: 1) issue an order compelling Supercom to participate in arbitration in accordance with the Arbitration Provisions of the contracts; and 2) issue an injunction enjoining Supercom from issuing or transferring its shares and/or other equity without Streeterville's prior consent. (Id.)

On January 29, 2021, and June 23, 2021, Streeterville issued Promissory Notes to Supercom. (Id. at 3.) The January 2021 Note was for $7,000,000, while the June 2021 Note was for $5,000,000. (Id.) Section 1.1 of the Notes required Supercom to pay off the outstanding balance within two years of each Note's execution. (Promissory Notes, ECF No. 1-2 at 45, 76.) Streeterville alleges that the outstanding balance under both Notes now exceeds $20,000,000. (ECF No. 1-2 at 4.) "In connection with each of the Notes, Streeterville and Supercom executed a Subordination Agreement" and a Note Purchase Agreement. (Id.) The Notes, Note Purchase Agreements, and Subordination Agreements are, together, referred to as the "Transaction Documents." (See id.)

The Transaction Documents contain several provisions that are relevant to the current disputes. Section 8.2 of the Note Purchase Agreements provides that:

> Each party consents to and expressly agrees that the exclusive venue for arbitration of any dispute arising out of or relating to any Transaction Document or the relationship of the parties or their affiliates shall be in Salt Lake County, Utah. Without modifying the parties' obligations to resolve disputes hereunder pursuant to the Arbitration Provisions, for any litigation arising in connection with any of the Transaction Documents, each party hereto hereby (i) consents to and expressly submits to the exclusive personal jurisdiction of any state or federal court sitting in Salt Lake County, Utah, (ii) expressly submits to the exclusive venue of any such court[,] … and (iii) waives any claim, defense or objection to the bringing of any such proceeding in such jurisdiction or to any claim that such venue of the suit, action or proceeding is improper.

(Note Purchase Agreements, ECF No. 1-2 at 31, 62.)  The Note Purchase Agreements further require that "in the event there is a conflict between any provision set forth in this Section 8 and any provision in any other Transaction Document, the provision in such other Transaction Document shall govern."  (Id. at 30, 61.)

The Note Purchase Agreements also state that the "parties shall submit all Claims (as defined in Exhibit D) arising under this Agreement or any other Transaction Document … to binding arbitration pursuant to the arbitration provisions set forth in Exhibit D[.]"  (Id.)  Exhibit D to the Note Purchase Agreements broadly defines "Claims" to include "any disputes, claims, demands, causes of action, requests for injunctive relief, requests for specific performance, liabilities, damages, losses, or controversies whatsoever arising from, related to, or connected with the transactions contemplated in the Transaction Documents …."  (Ex. D to Note Purchase Agreements, ECF No. 1-2 at 37, 68.)

Under the Subordination Agreements signed in connection with each Note, the parties agreed that Streeterville's security interests and/or liens in Supercom's assets or property [would be] subordinate to the security interests and/or liens that "Senior Lenders" have or will have in Supercom's assets and/or property.  (Subordination Agreements, ECF No. 1-2 at 87, 97.)  The Notes and Note Purchase Agreements recognize that at the time of those transactions, Supercom "had already obtained loans from certain senior lenders, which were secured by the assets and property of [Supercom] (the 'Senior Debt')."  (Decl. Ordan Trabelsi, ECF No. 5 at ¶ 3.)  Even so, the Subordination Agreements permit Streeterville to bring an action seeking an injunction that prevents Supercom from issuing equity without Streeterville's prior consent following an event of default under the Notes, even when the Senior Debt is outstanding.  (ECF No. 1-2 at 89, 99.) "Senior Debt" refers to "all obligations and indebtedness of [Supercom] to the Senior Lenders[.]"

3

(Id. at 88, 98.)  Finally, the Subordination Agreements indicate that: "This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York, without regard to principles of conflicts of law.  Jurisdiction shall lie in New York County, New York."  (Id. at 92, 102.)

## ANALYSIS

### I.    Motion to Dismiss for Lack of Personal Jurisdiction

To overcome a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie case of personal jurisdiction.  Hydro Eng'g v. Landa, Inc., 231 F. Supp. 2d 1130, 1133 (D. Utah 2002).  Defendants may waive or consent to personal jurisdiction.  See Butler v. Daimler Trucks N. Am., LLC, 433 F. Supp. 3d 1216, 1235 (D. Kan. 2020) ("A defendant may consent to personal jurisdiction explicitly, such as through the use of a forum selection clause or some other agreement, or implicitly through its actions, for example, by appearing in court and arguing the merits of the case." (cleaned up)); see also SII MegaDiamond, Inc. v. Am. Superabrasives Corp., 969 P.2d 430, 437 (Utah 1998) ("When a defendant consents to personal jurisdiction in a federal court sitting in diversity, that defendant necessarily consents to the forum state's exercise of personal jurisdiction.").  "[W]hen parties consent to personal jurisdiction in a certain forum, there is no need to analyze the forum state's long-arm statute or the party's contacts with the forum state."  Colt Builders Corp. v. Maille, No. 2:18-cv-861, 2019 WL 720707, at *2 (D. Utah Feb. 20, 2019).  Forum selection clauses are "prima facie valid and should be enforced unless they are unjust or unreasonable under the circumstances."  Id. (cleaned up).

Supercom argues that the forum selection clauses in the Note Purchase Agreements and Subordination Agreements are in conflict and as a result, the Subordination Agreements control.

(ECF No. 4 at 2; <u>see</u> ECF No. 1-2 at 30, 61 ("[I]n the event there is a conflict between any provision set forth in … Section 8 [of the Note Purchase Agreements] and any provision in any other Transaction Document, the provision in such other Transaction Document shall govern.").) Streeterville disagrees and contends that the forum selection clauses are not in conflict and that therefore the Note Purchase Agreements control.  (Resp. in Opp'n to Mot. to Dismiss, ECF No. 10 at 2, 9.)

The court finds that the forum selection clauses do not conflict.  As stated above, Section 8.2 of the Note Purchase Agreements require that:

> [F]or any litigation arising in connection with any of the Transaction Documents, each party hereto hereby (i) consents to and expressly submits to the exclusive personal jurisdiction of any state or federal court sitting in Salt Lake County, Utah, (ii) expressly submits to the exclusive venue of any such court[,] … and (iii) waives any claim, defense or objection to the bringing of any such proceeding in such jurisdiction or to any claim that such venue of the suit, action or proceeding is improper.

(ECF No. 1-2 at 31, 62.)  The Subordination Agreements state that they "shall be governed by … the internal laws of the State of New York … [and] Jurisdiction shall lie in New York County, New York."  (<u>Id.</u> at 92, 102.)

The Note Purchase Agreements make clear that for any litigation arising under the Notes and Note Purchase Agreements, the parties will submit to the exclusive personal jurisdiction and venue of any state or federal court in Salt Lake County, Utah.  Here, Streeterville is pursuing litigation based on rights arising from the Notes and Note Purchase Agreements, not the Subordination Agreements.  No Senior Lender is before this court arguing that any party breached its obligations to the Senior Lenders or the Senior Debt.  Under Section 8.3 of the Note Purchase Agreements,

> [Supercom] specifically agrees that following an Event of Default (as defined in the Note) under the Note, [Streeterville] shall have the right to seek and receive

5

injunctive relief from a court or an arbitrator prohibiting [Supercom] from issuing any of its Ordinary Shares or other class of equity securities to any party unless the Note is being paid in full simultaneously with such issuance.

(ECF No. 1-2 at 31, 62.)  The Notes list several "events of default," including when "[Supercom] fails to pay any principal, interest, fees, charges, or any other amount when due and payable [under the Notes.]"  (Id. at 48, 79.)  According to the Notes, Supercom agreed to pay Streeterville the Note Purchase Prices plus "any interest, fees, charges, and late fees, accrued [under the Notes] on the date that is twenty-four (24) months after the Purchase Price Date[.]"  (Id.)  As stated above, the Note Purchase Prices were $7,000,000 and $5,000,000, and the respective Purchase Price Dates were January 29, 2021, and June 23, 2021.  (Id. at 45, 76.)  As defined by the Notes, Supercom is in default.  (See id. at 48, 79.)  Consequently, Streeterville is exercising its rights under the Notes and Note Purchase Agreements to seek injunctive relief from a court or an arbitrator prohibiting Supercom from issuing any of its shares and/or other equity without Streeterville's prior consent.  (See id. at 31, 62.)

Because Streeterville is suing Supercom under the Notes and Note Purchase Agreements, the Subordination Agreements' forum selection clauses do not apply.  Jurisdiction for matters arising under the Subordination Agreements, not any other Transaction Document, lies in New York.  "When interpreting a contract[,] [courts] attempt to give effect to each provision, and … look for a reading that harmonizes the provisions and avoids rendering any provision meaningless."  UDAK Props. LLC v. Canyon Creek Comm. Ctr. LLC, 482 P.3d 841, 847 (Utah Ct. App. 2021) (citation omitted).  Finding a conflict between the forum selection clauses in the Note Purchase Agreements and the Subordination Agreements would render the entirety of Section 8.2 in the Note Purchase Agreements meaningless, in violation of Utah contract interpretation principles.  Furthermore, by signing the Note Purchase Agreements, "[Supercom]

acknowledge[d] that the governing law and venue provisions set forth in … Section 8.2 are material terms to induce [Streeterville] to enter into the Transaction Documents and that but for [Supercom's] agreements set forth in … Section 8.2[,] [Streeterville] would not have entered into the Transaction Documents."  (ECF No. 1-2 at 31, 62.)

The Subordination Agreements are only relevant to the extent they limit the rights Streeterville has under the Notes and Note Purchase Agreements.  For example, Section 3 of the Subordination Agreements states that: "[Streeterville] by its acceptance of the Note, agrees that no payment or distribution of any kind, whether direct or indirect … shall be made on account of any Subordinated Debt … by or for the account of [Supercom] or any guarantor, at any time during which any Senior Debt shall be outstanding or any commitment to extend Senior Debt exists."  (Id. at 88, 98.)  But even when the Senior Debt is outstanding, and Supercom maintains that it is (see ECF No. 5 at ¶ 5), the Subordination Agreements permit Streeterville to "bring an action for the sole purpose of obtaining an injunction preventing [Supercom] … from issuing any equity without [Streeterville's] prior written consent[.]"  (ECF No. 1-2 at 89, 99.)  That is the remedy Streeterville requests here.  (See ECF No. 1-2 at 8 (including in complaint prayer for relief that Streeterville seeks "an injunction, to issue without bond, enjoining Supercom from issuing or transferring Ordinary Shares and/or other equity, including the shares of its Subsidiary entities without prior consent from Streeterville").)

Because the forum selection clauses in the Note Purchase Agreements do not conflict with the forum selection clauses in the Subordination Agreements, and Streeterville is permissibly exercising its rights under the Notes and Note Purchase Agreements within the limits of the Subordination Agreements, the court finds that Supercom consented to personal jurisdiction in Utah.  Consequently, the court need not "analyze the forum state's long-arm

statute or the party's contacts with the forum state." Colt Builders Corp., 2019 WL 720707, at

*2.

The court denies Supercom's motion to dismiss for lack of personal jurisdiction.

## II.     Motion to Compel Arbitration

The Utah Uniform Arbitration Act reads:

> On motion of a person showing an agreement to arbitrate and alleging another
> person's refusal to arbitrate pursuant to the agreement: … (b) if the refusing party
> opposes the motion, the court shall proceed summarily to decide the issue and
> order the parties to arbitrate unless it finds that there is no enforceable agreement
> to arbitrate.

Utah Code Ann. § 78B-11-108.  In ruling on a motion to compel arbitration, "courts must resolve

'whether the parties are bound by a given arbitration clause' and 'whether an arbitration clause in

a concededly binding contract applies to a particular type of controversy.'" Uptown Cheapskate,

LLC v DDM Fashions #1, LLC, No. 2:22-cv-00360, 2022 WL 4771791, at *2 (D. Utah Oct. 3,

2022) (quoting Beltran v. AuPairCare, Inc., 907 F.3d 1240, 1250 (10th Cir. 2018)).  "[I]f there is

any question as to whether the parties agreed to resolve their disputes through arbitration …

[Utah courts] interpret the agreement keeping in mind [their] policy of encouraging arbitration."

Cent. Fla. Invs., Inc. v. Parkwest Assocs., 40 P.3d 599, 606 (Utah 2002).

Streeterville argues that by signing the Note Purchase Agreements, the parties agreed to

arbitrate a request for an injunction enjoining Supercom from issuing or transferring shares

and/or other equity without Streeterville's prior consent.  (ECF No. 9 at 2.)  Supercom contends

that the Note Purchase Agreements and the Subordination Agreements, which do not contain any

agreement to arbitrate disputes between the parties, are in conflict and that the Subordination

Agreements control.  (Resp. in Opp'n to Mot. to Compel Arbitration, ECF No. 20 at 2; ECF No.

1-2 at 30, 61 ("[I]n the event there is a conflict between any provision set forth in … Section 8

[of the Note Purchase Agreements] and any provision in any other Transaction Document, the provision in such other Transaction Document shall govern.").)  Supercom further asserts that because the Agreements are in conflict, the parties did not reach a "meeting of the minds" to arbitrate any disputes between them.  (ECF No. 20 at 2.)

The court agrees with Streeterville that the parties agreed to arbitrate the claim for injunctive relief Streeterville is bringing against Supercom under the Notes and the Note Purchase Agreements.  The Note Purchase Agreements are clear that "[t]he parties shall submit all Claims (as defined in Exhibit D) arising under this Agreement or any other Transaction Document … to binding arbitration pursuant to the arbitration provisions set forth in Exhibit D[.]"  (ECF No. 1-2 at 30, 61.)  Exhibit D then states that "'Claims' means any disputes, claims, … requests for injunctive relief … arising from, related to, or connected with the transactions contemplated in the Transaction Documents[.] … The parties hereby agree that the arbitration provisions set forth in this Exhibit D ('Arbitration Provisions') are binding on each of them." (ECF No. 1-2 at 37, 68.)

Supercom is correct that the Subordination Agreements do not require arbitration for any claims between the parties, but the Subordination Agreements do not prohibit arbitration for any claims between the parties.  The Subordination Agreements are simply silent on arbitration. Where the Note Purchase Agreements not only mention the parties' obligations to arbitrate certain claims, but require it, and the Subordination Agreements say nothing about arbitration, there is no conflict between them.  See UDAK Props., 482 P.3d at 847 (stating that when courts interpret contracts, they should "look for a reading that harmonizes the provisions").  Moreover, the Note Purchase Agreements and the Subordination Agreements allow Streeterville "to seek and receive injunctive relief from a court or an arbitrator prohibiting [Supercom] from issuing

any of its … [s]hares or other class of equity securities to any party unless the Note is being paid in full simultaneously with such issuance." (ECF No. 1-2 at 31, 62; <u>see also id.</u> at 89, 99.) This is true even when the Senior Debt is outstanding. (<u>See id.</u> at 89, 99.)

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1.      Supercom's motion to dismiss for lack of personal jurisdiction (ECF No. 4) is DENIED; and

2.      Streeterville's motion to compel arbitration (ECF No. 9) is GRANTED.  The court will stay this action pending the outcome of the arbitration.  The parties must provide the court with a status report within one year from the date of this order or within 30 days of an arbitration decision, whichever is sooner.

DATED this 12th day of April, 2024.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge